■ LEON TALBOT et al., Respondents-Appellants, v JOHNSON NEWSPAPER CORPORATION et al., Appellants-Respondents, and STUART P. MacLAREN et al., Defendants.—Weiss, J. ■

On May 7, 1982, plaintiff Leon Talbot (hereinafter Talbot), the basketball and tennis coach at St. Lawrence University, hosted a backyard barbeque at his home. While driving home, a member of the basketball team struck and killed Sarah Ferguson, a college student who was jogging on a roadway.[1] On October 31, 1984, a lengthy article was published in the *Watertown Daily Times,* published by defendant Johnson Newspaper Corporation, which quoted extensively from a letter dated October 5, 1984 written to the chairman of the University Board of Trustees by defendant Stuart P. Mac-Laren, whose daughter Patricia was a 1982 graduate of the University. Copies of the letter were sent to 37 Trustees of the University. MacLaren stated that his daughter and her brother attended a party at a campus fraternity house approximately two weeks after the Ferguson accident where they observed Talbot "intoxicated to a comatose state sitting on a sofa with his head back, eyes closed, and mouth open while students laughingly poured beer into his open mouth". The letter called upon the University to purge itself of wrongful behavior and dismiss those who displayed poor judgment in the Ferguson incident. On November 3, 1984, a follow-up article appeared in the newspaper captioned "Coach's Double Fell Asleep on Frat Sofa" and which repeated in detail the MacLaren letter, the tragic events of May 7, 1982, the results of an investigation which exonerated Talbot, and reported that an unrelated, unnamed man who bore an "uncanny resemblance" to Talbot was the actual person described in the MacLaren letter.

This action to recover damages by Talbot and his wife was

---

1. The basketball player was initially charged with driving while intoxicated. He was acquitted after trial of all alcohol-related offenses and cleared by a Grand Jury. He was convicted of failing to keep right and paid a $20 fine.

subsequently commenced.[2] Plaintiffs were required by order of Special Term to serve an amended complaint to comply with CPLR 3013, 3014 and 3016 (a). Thereafter, Special Term granted another motion by defendant newspaper which dismissed plaintiffs' causes of action sounding in intentional infliction of emotional distress and prima facie tort; dismissed the second and fourth causes of action sounding in libel by extrinsic fact, with leave to replead; and ordered that certain paragraphs of the amended complaint containing multiple allegations be broken down and subenumerated. In all other respects, the dismissal motion was denied. Defendants have appealed and plaintiffs have cross-appealed that portion of the order granting the relief above described.

Defendants initially maintain that plaintiffs' first cause of action should be dismissed, with leave to replead, since it impermissibly states separate legal theories of liability, contains scandalous matter and otherwise fails to conform to the pleading requirements of CPLR 3014. Liberally construed, this cause of action need not be dismissed for impermissible combining of legal theories. A party is generally required to separately plead legal theories where "the different theories entailed different underlying material facts" (3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3014.08). This is not the case here, where but a single set of material facts is involved regardless of the theory of liability. Consequently, we discern no overriding impediment to the answering of the complaint. The scandalous matter objected to consists of the allegation that defendants "engaged in an intentional, callous, malicious and unjustified *vendetta* against Leon Talbot" (emphasis supplied). CPLR 3024 (b) provides for the striking of prejudicial material unnecessarily included in a pleading, as measured by whether the matter would be admissible at trial (3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3024.10; *see, Wegman v Dairylea Coop.,* 50 AD2d 108, 111, *lv dismissed* 38 NY2d 918). Plaintiffs maintain that the purpose of the "vendetta" allegation is to establish intentional misconduct on defendants' part so as to justify punitive damages. Proof of a vendetta, however, is not required to demonstrate intent on defendants' part and extends beyond the scope of the articles challenged. Since this allegation has the potential for prejudicing a jury, it should be stricken. Finally, plaintiffs properly used the phrases "should have known" and "had reason to know" as relevant to the

---

2. The term "defendants" refers to all defendants except Stuart and Patricia MacLaren.

gross irresponsibility standard (see, *Chapadeau v Utica Observer-Dispatch*, 38 NY2d 196, 199); plaintiffs confirmed that this language was not intended to state a separate claim in negligence.

Next, defendants maintain that Special Term should have dismissed the third cause of action because the November 3, 1984 article was nondefamatory as a matter of law. Even accepting plaintiffs' allegations as true and considering the article's effect on the everyday reader (see, *Silsdorf v Levine*, 59 NY2d 8, 12-13, *cert denied* 464 US 831; *James v Gannett Co.*, 40 NY2d 415, 419), we agree with defendants that this article is not reasonably susceptible of a defamatory connotation. In essence, this article reported that subsequent to investigation, Talbot was not, in fact, the intoxicated man referred to in the initial article. The entire tenor of this article was exculpatory and thus plaintiffs' third cause of action should be dismissed.

While defendants candidly acknowledge that Talbot's wife was entitled to plead a claim for loss of consortium (see, *Garrison v Sun Print. & Pub. Assn.*, 207 NY 1, 10), they challenge the fifteenth cause of action insofar as she seeks recovery for her own embarrassment or humiliation and her husband's lost earning potential. We agree with this limitation. Since Talbot's wife was not personally mentioned in either article, she has no claim for humiliation and embarrassment (see, 44 NY Jur 2d, Defamation and Privacy, § 120, at 110). Nor may she recover the loss of her husband's earnings, which Talbot alone is entitled to seek (see, *Groat v Town Bd.*, 100 Misc 2d 326, 329). It follows that these portions of the fifteenth cause of action must be dismissed.

Turning to plaintiffs' cross appeal, we find that Special Term properly dismissed plaintiffs' second and fourth causes of action, premised on libel by extrinsic fact, since plaintiffs failed to allege special damages. Plaintiffs acknowledge their obligation to allege special damages with respect to these claims, but maintain they successfully did so. We disagree. The claim that a party has been damaged in a "round figure" amount of $1,000,000, as here, is of insufficient particularity to constitute an allegation of special damages (see, *Garland v Vermilyea*, 88 AD2d 1044, 1045). Indeed it was plaintiffs' burden to accurately identify actual losses (see, *Matherson v Marchello*, 100 AD2d 233, 235). Although plaintiffs have particularized the "special harm" engendered to their reputation and occupation, the complaint fails to state the special damages with sufficient particularity. Thus, Special Term did not

err in dismissing this portion of plaintiffs' complaint with leave to replead.

Order modified, on the law, without costs, by reversing so much thereof as denied defendants' motion to (1) strike paragraph 23 of the complaint, (2) dismiss the third cause of action, and (3) dismiss so much of the fifteenth cause of action as seeks recovery by plaintiff Jane Talbot for her own embarrassment or humiliation and her husband's lost earning potential; defendants' motion granted to that extent; and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.