1. The Court substitutes the proper name of Defendant Shih, sued previously as "John" Shih. The Clerk of Court is hereby directed to

section 33 of the Town of Onondaga Zoning Ordinance.

IT IS SO ORDERED.

**Kylene HYLTON, as Administratrix of the goods, chattels and credits that were of Kayla Reyes, deceased, and Kylene Hylton, individually, Plaintiff,**

v.

**NEW YORK METHODIST HOSPITAL, Christ Hospital, Annette Visconti, M.D., Ryan Burk, M.D., Vijay Akkapeddi, M.D., and Yangyu Steven Shih, M.D.,[1] Defendants.**

**No. 08–CV–3956 (RRM)(MDG).**

United States District Court,
E.D. New York.

Feb. 16, 2009.

amend the caption accordingly for all future proceedings in this matter.

Kenneth Todd Kerner, Richard A. Kerner, P.C., New York, NY, for Plaintiff.

Rosemary Ann Cinquemani, Furey Kerley Walsh Matera & Cinquemani, Seaford, NY, Eileen Budd, Hardin, Kundla, McKeon & Poletto, New York, NY, Bruce Arnold Seidman, Frank P. Leanza, Marshall, Dennehey, Warner, Coleman & Goggin, Roseland, NJ, for Defendants.

## *MEMORANDUM & ORDER*

MAUSKOPF, District Judge.

Plaintiff, Kylene Hylton, brings this action against Defendants seeking damages personally and on behalf of her infant daughter, who died following medical treatment by the Defendant physicians at New York Methodist Hospital and Christ Hospital in New Jersey.[2] Now before this Court is the joint motion of Christ Hospital physicians Vijay Akkapeddi and Yangyu Steven Shih to dismiss the Complaint. Both allege this Court's lack of subject matter jurisdiction over the common law

---

**2.** Plaintiff has since moved this Court to approve settlement of all claims asserted against Defendants New York Methodist and Drs. Visconti and Burke. *See* Docket Nos. 30 & 31. That motion having been referred to Magistrate Judge Marylin D. Go by Order dated February 9, 2010, will be considered by separate Memorandum & Order and, except as otherwise stated, does not directly bear on the limited issues addressed herein.

malpractice claims asserted against them, while Defendant Shih further claims that this Court is without personal jurisdiction as to him. For the reasons below, the motion to dismiss is GRANTED as to Shih and DENIED as to Akkapeddi.

## JURISDICTION

Subject matter jurisdiction in this action is predicated upon 42 U.S.C. § 1395dd, the Emergency Medical Treatment and Active Labor Act ("EMTALA"), for treatment rendered at New York Methodist. Supplemental jurisdiction for New York and New Jersey state law claims against the remaining co-defendants is sought pursuant to 28 U.S.C. § 1367(a).

## FACTUAL & PROCEDURAL BACKGROUND

The Court presumes the parties' familiarity with the factual and procedural background of this case. For purposes of the instant motion, however, the relevant facts are set forth as follows:

Plaintiff Hylton seeks damages for pain and suffering and wrongful death arising out of Defendants' alleged malpractice in treating Hylton's three-year-old daughter, Kayla Reyes, when she was brought to the Defendant hospitals' respective emergency rooms on March 13, 2008 (New York Methodist) and March 14, 2008 (Christ Hospital). Kayla Reyes died in Christ Hospital's emergency room on March 14, 2008, approximately 30 minutes after her admission and approximately 18 hours after being treated and discharged from New York Methodist.

Christ Hospital physicians Akkapeddi and Shih, both of whom treated Kayla Reyes at Christ Hospital in New Jersey, oppose the exercise of supplemental jurisdiction over the common law malpractice claims asserted against them. Seeking dismissal, Akkapeddi and Shih claim that their medical treatment bears an insufficient nexus to the EMTALA claim against New York Methodist, which singular federal claim provides the present basis for this Court's original jurisdiction.[3]

Additionally, Shih, a New Jersey resident, seeks dismissal on personal jurisdiction grounds. To wit, he avers that he is a New Jersey resident, licensed to practice medicine exclusively in New Jersey at Christ Hospital. Shih claims that his medical treatment of Reyes at Christ Hospital on March 14, 2008 bears an insufficient connection to this action's New York forum. Finally, Shih contends that the action must be dismissed based on Plaintiff's failure to effectuate timely service of process pursuant to requirements of Federal Rule of Civil Procedure 4(m).

## DISCUSSION

### A. Yangyu Steven Shih, M.D.

 This Court concurs that it is without personal jurisdiction over Defendant Shih. It is undisputed that Shih is a New Jersey resident owning no property in New York; that his professional medical license credentials originate exclusively from New Jersey; that he is without admitting privileges in New York hospitals; and that he is not affiliated with any New York medical office, association or practice. This Court, having determined that Shih is without generalized New York contacts sufficient to exercise jurisdiction over him in accordance with due process considerations (see, *Rivera v. Atlantic City Med. Ctr.*, No. 05–cv–6824, 2006 WL 851717, *1

---

**3.** As stated above, the EMTALA claim is, in part, the subject of a proposed infant compromise.

(S.D.N.Y. Mar. 30, 2006)), further rejects the view that Shih's medical treatment of Reyes in New Jersey on March 14, 2008, provides an adequate basis for the exercise of New York's long-arm jurisdiction.

Citing an Appellate Division case, *McLenithan v. Bennington Comm. Health Plan,* 223 A.D.2d 777 (3d Dep't 1996), Hylton argues that Shih is susceptible to New York's long-arm jurisdiction on the basis of his apparent acceptance of her Empire Blue Cross/Blue Shield medical insurance plan. *See* N.Y. C.P.L.R. 302(a)(1), (3). In sum, Hylton argues that a physician's contractual connection with a New York-based insurer is sufficient to interject him into the flow of New York commerce, and to engender a reasonable expectation that—having availed himself of New York-based remuneration for the care of New York patients—he shall be required to defend his actions in New York. *See McLenithan,* 223 A.D.2d at 778–79, 635 N.Y.S.2d 812 (finding that a physician's contract with a New York health provider sufficient to satisfy the "transacts business" prong of § 302(a)(1) long-arm jurisdiction). This Court disagrees.

■ First, the Court notes that *McLenithan,* an Appellate Division case, has been cast into serious doubt by the Court of Appeals decision in *Ingraham v. Carroll,* 90 N.Y.2d 592, 596, n. 1, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997) (distinguishing *McLenithan* and declining to extend). The utility of *McLenithan* is therefore suspect. In any event, the Empire Blue Cross/Blue Shield canard is easily dispelled by reference to Reyes' Christ Hospital admission form—which makes no reference whatsoever to Empire Blue Cross/ Blue shield, but rather to "CIGNA PPO," a Pennsylvania-based entity. Plaintiff's singular argument for long-arm jurisdiction therefore has no traction. Even if, however, Shih or Christ Hospital actually did bill a New York-based insurer in connection with Reyes' treatment, long-arm jurisdiction remains inappropriate. *See Ingraham,* 90 N.Y.2d at 598–99, 665 N.Y.S.2d 10, 687 N.E.2d 1293.

In *Ingraham,* as here, the Court of Appeals rejected the exercise of long-arm jurisdiction in a medical malpractice action against a Vermont physician who routinely treated New York residents, including the decedent plaintiff. *Id.* The *Ingraham* Court declined to find that the defendant physician had entered the flow of commerce for purposes of long-arm jurisdiction, despite his having received substantial compensation from the treatment of New York patients. The *Ingraham* Court held:

> The situation where a local physician treats a nonresident patient is by no means uncommon. For example, local physicians may treat nonresident patients traveling on vacation, or, as in this case, because the physician's office is located close to a State border. Perhaps the most common example is where a physician is so outstanding a specialist in a particular field as to attract numerous referrals from other physicians. Such a physician may treat patients from many different States on a daily basis.
>
> The diversity of a physician's pool of patients, without more, cannot convert an otherwise local practice to an interstate business activity. A physician does not sell his or her services in interstate commerce by treating unsolicited patients that travel into the physician's home State seeking health care.... Unlike a manufacturer who introduces a product into the stream of commerce expecting it to be sold in other States, a physician treating patients in his or her home State is providing a service that is inherently personal, and local, in nature.

*Id.* at 599–600, 665 N.Y.S.2d 10, 687 N.E.2d 1293.

Other federal courts applying the controlling *Ingraham* rationale have dismissed similar medical malpractice claims against out-of-state physicians for lack of personal jurisdiction. *See Maggi v. Women's Coll. Hosp.*, 2007 WL 841765, *4 (N.D.N.Y. Mar. 19, 2007). Indeed, under circumstances nearly identical to those present here, federal courts in New York have applied *Ingraham* to hold that New York's long-arm statute does not extend to New Jersey physicians merely on the basis of participation in a New York-based health insurance plan. *See, e.g., Rivera v. Atlantic City Med. Ctr.*, 2006 WL 851717, *2–3 (S.D.N.Y. March 30, 2006) (recognizing *Ingraham* as controlling authority and dismissing malpractice action against New Jersey physician for lack of personal jurisdiction). This Court agrees, and finds that Plaintiff has failed to plead a *prima facie* case sufficient to support a finding of personal jurisdiction over Defendant Shih. As such, Plaintiff's malpractice claims against Shih are hereby dismissed without prejudice.

## B. Vijay Akkapeddi, M.D.

■ From the outset, Akkapeddi has challenged this Court's subject matter jurisdiction as to him. Noting that federal jurisdiction in this case was premised upon resolution of a federal question (see, 28 U.S.C. § 1331), namely the EMTALA claim against New York Methodist, Akkapeddi's first argument is that EMTALA— a statute focused upon the conduct of medical institutions—fails to provide a cause of action against individual doctors. Second, Akkapeddi argues that his conduct is insufficiently related to the EMTALA claim as to warrant the exercise of this Court's 28 U.S.C. § 1367 supplemental jurisdiction.

■ Were Akkapeddi's two-fold argument the only consideration before this Court, the motion would be denied. While there is no dispute that EMTALA is inapplicable to individual physicians, the resolution of the EMTALA claim initially pled here provides a proper basis for the simultaneous review of the related malpractice claims against the defendant New York and New Jersey treating physicians. *See e.g., Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F.Supp.2d 179, 192 (E.D.N.Y.2001) (exercising supplemental jurisdiction over individual malpractice claims pending disposition of related EMTALA claim). Accordingly, this Court maintains broad discretion to exert supplemental jurisdiction over relevant State law malpractice claims, including claims as against Akkapeddi, in connection with the proper adjudication of Plaintiff's federal EMTALA claim.

It now appears, however, that Plaintiff intends to settle its EMTALA claim against New York Methodist. If approved, extinguishment of the federal question, which forms the jurisdictional predicate of this case, may affect the equities of maintaining supplemental jurisdiction over the remaining state law claims; although this Court notes that doing so is not without precedent. *See, e.g., Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1567–68 (11th Cir.1994) (retaining state-law malpractice claims upon dismissal of federal EMTALA claim). Accordingly, this Court reserves decision on whether to retain jurisdiction of any surviving malpractice claims until it is in a position to review the Magistrate's Report & Recommendations concerning settlement of the EMTALA claim. Should the EMTALA claim be resolved, the Court will, at that point, reexamine whether or not retention of State-law malpractice

claims under 28 U.S.C. § 1367 is appropriate.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to Defendant Shih and DENIED as to Defendant Akkapeddi.

SO ORDERED.