Scott C. Gottlieb, Appellant, v James M. Merrigan, Individually and Doing Business as Rawson, Merrigan & Litner, LLP, et al., Respondents. [990 NYS2d 109]—

Clark, J. Appeals (1) from an order of the Supreme Court (Tait, J.), entered March 21, 2013 in Broome County, which

granted defendants' motion to dismiss the complaint, and (2) from the judgment entered thereon.

In May 2007, nonparty Mark Swanson retained plaintiff, an attorney licensed in New York, to represent him in connection with a personal injury action in Massachusetts. Swanson, who was a resident of New York and employed by a corporation organized and existing in New York, suffered injuries during the course of his employment in Massachusetts when he was struck by a garbage truck owned by Massachusetts Waste Systems, Inc. Swanson also sought workers' compensation benefits and was represented by separate New York counsel on that claim. In January 2009, Swanson discharged plaintiff and retained defendant James M. Merrigan and his law firm, defendant Rawson, Merrigan & Litner, LLP—a resident of Massachusetts and a Massachusetts limited liability partnership, respectively—to handle the personal injury action against Massachusetts Waste Systems. Following mediation in 2011, the parties to the personal injury action agreed to settle it for $800,000, and defendants were to be paid a fee from the proceeds of the settlement.

The New York Transportation Trust, which was the workers' compensation carrier for Swanson's employer, asserted a lien on the settlement proceeds that Swanson was to receive in his personal injury action (see Workers' Compensation Law § 29 [1]). There is evidence in the record that defendants negotiated a resolution of the lien with the New York workers' compensation carrier, obtaining an agreement that $68,402 from Swanson's settlement would be paid to the carrier's third-party administrator in satisfaction of the lien. Thereafter, Swanson, his New York attorneys on the workers' compensation claim and the carrier entered into a settlement agreement pursuant to Workers' Compensation Law § 32 providing that the carrier would consent to the settlement of Swanson's action in Massachusetts and otherwise waive its lien in exchange for $68,402 being held in escrow. Swanson also agreed to waive his workers' compensation claims associated with the accident, as well as his right to petition any court for additional monies pursuant to *Burns v Varriale* (9 NY3d 207 [2007]), representing any additional contribution by the carrier of its equitable share of Swanson's counsel fees relative to the Massachusetts action. The section 32 agreement was contingent on the approval of the Workers' Compensation Board (see Workers' Compensation Law § 32 [b]; *Matter of Abel v Wolff & Dungey*, 287 AD2d 914, 915 [2001], *lv dismissed* 97 NY2d 700 [2002]), which the Board granted by decision filed in March 2012.

Plaintiff, who had previously notified the insurer for Massachusetts Waste Systems that he was asserting a lien for his own counsel fees against any recovery by Swanson in the Massachusetts action, was informed by the insurer that the Massachusetts action had settled. Plaintiff also obtained a copy of an email sent by Merrigan to the insurer, in which Merrigan agreed to compensate plaintiff for his work on Swanson's Massachusetts action and to hold the insurer harmless from any claims for compensation by plaintiff. Nevertheless, plaintiff and Merrigan were unable to agree on a compensation rate, and plaintiff commenced this action seeking $66,778.39, which was approximately 25% of the fee received by defendants in settling Swanson's personal injury action. Supreme Court granted defendants' motion to dismiss the complaint for lack of personal jurisdiction, prompting this appeal.

We reverse. New York courts "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302 [a] [1]). Inasmuch as CPLR 302 (a) (1) is a "single act statute . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006], *cert denied* 549 US 1095 [2006] [internal quotation marks and citation omitted]; *see Fischbarg v Doucet*, 9 NY3d 375, 380 [2007]; *Urfirer v SB Bldrs., LLC*, 95 AD3d 1616, 1617 [2012]). With respect to the requirement of a substantial relationship, "the existence of some articulable nexus between the business transacted and the cause of action sued upon" is "[e]ssential to the maintenance of a suit against a nondomiciliary under CPLR 302 [(a) (1)]" (*McGowan v Smith*, 52 NY2d 268, 272 [1981]; *see Johnson v Ward*, 4 NY3d 516, 519-520 [2005]; *McLenithan v Bennington Community Health Plan*, 223 AD2d 777, 778 [1996], *lv dismissed* 88 NY2d 1017 [1996]). Although plaintiff bears the burden of proof as the party seeking to assert jurisdiction, that burden "does not entail making a prima facie showing of personal jurisdiction; rather, plaintiff need only demonstrate that it made a 'sufficient start' to warrant further discovery" (*Bunkoff Gen. Contrs. v State Auto. Mut. Ins. Co.*, 296 AD2d 699, 700 [2002], quoting *Peterson v Spartan Indus.*, 33 NY2d 463, 467 [1974]; *see Benifits by Design Corp. v Contractor Mgt. Servs., LLC*, 75 AD3d 826, 830 [2010]). In that regard, we note that the issue of whether long-arm jurisdiction exists often presents complex questions; "[d]iscovery

is, therefore, desirable, indeed may be essential, and should quite probably lead to a more accurate judgment than one made solely on the basis of inconclusive preliminary affidavits" (*Peterson v Spartan Indus.*, 33 NY2d at 467).

In our view, plaintiff has made a "sufficient start" and demonstrated that additional facts establishing personal jurisdiction "may exist" but are within defendants' exclusive control (*id.* at 467). Specifically, plaintiff raised questions of fact regarding whether defendants interjected themselves into Swanson's New York workers' compensation proceeding, ultimately negotiating the workers' compensation lien on the settlement proceeds from Swanson's personal injury action. Plaintiff argues that, without obtaining settlement of the lien and effecting its payment, defendants would have been unable to resolve the Massachusetts action or collect the counsel fees that are the subject of this action. Although defendants submitted an affidavit asserting that their communications in the workers' compensation case were "limited" and they maintain that the case was handled by Swanson's separate New York counsel, we conclude that plaintiff has made an adequate showing of defendants' involvement to survive a motion to dismiss.

Particularly relevant to the issue, plaintiff submitted a letter from Merrigan, in which Merrigan stated, *"I negotiated the worker[s'] compensation lien* so as to maximize Mr. Swanson's portion of the settlement" (emphasis added). While defendants now assert, in the alternative, that any involvement on their part in the workers' compensation proceeding was "not a voluntary act" availing themselves of the benefits of conducting business in New York, they do not dispute that they knowingly chose to represent a New York resident seeking to recover on an injury for which he was also receiving New York workers' compensation benefits. Nor do defendants dispute that the consent of the New York carrier and the approval of the Workers' Compensation Board—along with defendants' arrangement to pay the carrier out of the settlement proceeds—was necessary to settle Swanson's case, and that they initiated and pursued negotiation with the carrier. Under these circumstances, plaintiff has sufficiently established, for purposes of obtaining further discovery, an evidentiary basis supporting his claim that defendants "engaged in purposeful activities in New York for [their] benefit by negotiating material terms" of the workers' compensation settlement agreement and that such negotiation may have taken place in New York (*Owens v Freeman*, 65 AD3d 731, 733 [2009], *lv dismissed* 13 NY3d 855 [2009]; *see Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d at 71-72; *George Reiner & Co. v*

*Schwartz*, 41 NY2d 648, 653 [1977]; *Bunkoff Gen. Contrs. v State Auto. Mut. Ins. Co.*, 296 AD2d at 700-701).

Contrary to defendants' argument, plaintiff has also, at the least, raised an issue of fact regarding whether his action for fees is substantially related to the negotiation of the workers' compensation lien. The counsel fees to be received by either plaintiff or defendants were generated by the settlement of the Massachusetts personal injury action and, as noted above, there is no dispute that settlement was dependent upon the consent of the carrier. There is, as noted above, evidence that the settlement was negotiated by defendants. Moreover, the negotiation of the carrier's workers' compensation lien necessarily involved the issue of counsel fees in the Massachusetts personal injury action because the carrier was responsible for its equitable share of those fees.

When a workers' compensation claimant, such as Swanson, "recovers in a third-party action, the compensation carrier is granted a lien on the amount of the recovery proceeds equal to the amount of past compensation it has paid, with interest," but subject "to a deduction for costs and attorney's fees" in the third-party action (*Matter of Kelly v State Ins. Fund*, 60 NY2d 131, 136 [1983]). The deduction for counsel fees is required because a "carrier *must* . . . contribute the costs of litigation in proportion to the benefit[s] it has received," with one benefit being "[t]he lien [that] serves to permit [the] carrier[ ] to recoup past outlays of compensation" (*id.* at 140 [emphasis added]). In the negotiation of the lien—regardless of whether it was negotiated by defendants or Swanson's New York counsel on the workers' compensation claim—the amount of prior workers' compensation benefits paid to Swanson was required to be reduced by, among other things, the carrier's "equitable share of the costs incurred in recovering the lien amount, i.e., the percentage of the total recovery that it cost [Swanson] in counsel fees and disbursements to bring the [Massachusetts] action" (*Burns v Varriale*, 34 AD3d 59, 65 [2006], *affd* 9 NY3d 207 [2007]; *see Matter of Stenson v New York State Dept. of Transp.*, 96 AD3d 1125, 1125-1126 [2012], *lv denied* 19 NY3d 815 [2012]).

The amount that it cost Swanson in counsel fees and disbursements to bring the Massachusetts action—along with the proper distribution of those fees among the parties herein—are critical issues in this action. Similarly, counsel fees in the Massachusetts action were part of the Workers' Compensation Law § 32 agreement before the Workers' Compensation Board. Indeed, the section 32 agreement, on its face, references the issue of counsel fees in the Massachusetts action, providing that claimant waived

his right to seek "additional monies representing the carrier's equitable share of . . . attorney's fees and costs relative to the [Massachusetts] action."* Further, in considering whether to approve the settlement of the New York workers' compensation case, the Board was required to determine whether the "proposed agreement [was] unfair, unconscionable or improper as a matter of law," including the amount of the lien—negotiated by defendants—less counsel fees incurred in the Massachusetts action (*see* Workers' Compensation Law § 32 [b] [1]). We note that, although the section 32 agreement was signed by Swanson's New York counsel on the workers' compensation claim, as opposed to defendants, approval of that agreement was nonetheless required to effect a resolution of the Massachusetts action and so that defendants could collect their fee. In light of the foregoing, we conclude that plaintiff has adequately demonstrated, for purposes of obtaining discovery, that the "business actually transacted here was sufficiently related to the subject matter of the lawsuit to justify the exercise of in personam jurisdiction" (*McGowan v Smith*, 52 NY2d at 273; *see Fischbarg v Doucet*, 9 NY3d at 384; *McLenithan v Bennington Community Health Plan*, 223 AD2d at 778-779; *cf. Johnson v Ward*, 4 NY3d at 520 [2005]). Finally, if plaintiff's allegations regarding defendants' negotiation of the lien—including the amount of counsel fees—with the New York carrier and the involvement of the Workers' Compensation Board prove to be correct following discovery, due process is not offended by requiring defendants to defend themselves in New York (*see Fischbarg v Doucet*, 9 NY3d at 384-385).

Plaintiff's remaining arguments are rendered academic by our determination.

Stein, J.P., McCarthy, Egan Jr. and Lynch, JJ., concur. Ordered that the order and judgment are reversed, on the law, with costs, motion denied, and matter remitted to the Supreme Court to permit defendants to serve an answer within 20 days of the date of this Court's decision.

---

* We note that, were plaintiff to pursue Swanson for his counsel fees based upon his retainer agreement with Swanson, the section 32 agreement would appear to bar Swanson from seeking to have the carrier contribute its equitable share of any additional fees owed.